IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID A. COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:11-CV-87 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff David Cook brought this action to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying his claims for Disability Insurance Benefits and Supplemental Security Income. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

**I.   PROCEDURAL HISTORY**

Mr. Cook filed his applications for benefits on December 21, 2006, alleging a disability onset date of January 1, 2003. (Tr. at 100-02, 103-07.)[2] His applications were denied initially (Tr. at 59, 61-64) and upon reconsideration (Tr. at 60, 67-71). Thereafter, he requested a hearing de novo before an Administrative Law Judge. (*See* Tr. at 75-78.) After a hearing, the ALJ determined that Mr. Cook was not disabled within the meaning of the Act. (Tr. at 11-20.)

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #6].

Thereafter the Appeals Council denied Mr. Cook's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

The five-step process to be used by the Commissioner to evaluate disability claims is well-established and will not be repeated here. *E.g., Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The scope of judicial review of the Social Security Commissioner's denial of social security benefits "is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets marks omitted).

## III. THE ALJ'S DECISION

The ALJ found at step one that Mr. Cook had not engaged in "substantial gainful activity" since his alleged onset date. At step two, the ALJ further determined that Mr. Cook suffered from two severe impairments: insulin-dependent diabetes mellitus and cardiomyopathy. (Tr. at 16.) The ALJ found at step three that neither of these impairments met or equaled a disability listing. Accordingly, the ALJ assessed Mr. Cook's residual functional capacity ("RFC") and determined that he could perform a full range of light work. (Tr. at 17.) Because Mr. Cook's past relevant work ("PRW") as a technical writer did "not require the performance of work-related activities precluded by" his RFC, the ALJ concluded that Mr. Cook could return to his PRW and was therefore not disabled. (Tr. at 19.)

## IV. CONTENTIONS and DISCUSSION

A.     Step Four:   Past Relevant Work

Mr. Cook first contends that, at step four, the ALJ failed to comply with SSR 82-62, *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General*, by summarily concluding, without rationale or discussion, that he could return to his Past Relevant Work as a technical writer as he actually performed such work.   Mr. Cook also maintains that "[t]he only evidence of record as to how [his] past work was 'actually performed' is [his] testimony" which shows that he "routinely spent half of his time as a technical writer 'in the field' actually performing . . . tasks . . . that significantly exceed[ed] the definition of 'light work.'" (Pl.'s Br. [Doc. #9] at 7 (citing Tr. at 37).)

At step four of the sequential analysis, the ALJ made findings of fact that that Mr. Cook could return to his past occupation "as actually performed."   (Tr. at 19.)   While the ALJ did not discuss any specific facts to support this conclusion, there is significant record support for it; indeed, the evidence comes from Mr. Cook himself.   In a Work History Report, Mr. Cook indicated that he had been a "Consulting Technical Writer" from the summer of 1990 until December 31, 2001, and that such work involved no standing, three hours of sitting, and half an hour of walking.   Mr. Cook indicated that the job involved "no lifting or carrying," but that the heaviest weight he lifted was 20 pounds, with frequent lifting of less than 10 pounds.   (Tr. at 147-48.)   Mr. Cook's statements in the Work History Report clearly indicate that his PRW as a technical writer, as he actually performed it, corresponded to at most the light level of exertion. Thus, contrary to Mr. Cook's allegations, his testimony did not constitute the only record evidence of the demands of his PRW as a technical writer.   To the extent the ALJ should have made more specific findings in view of Mr. Cook's contradictory testimony at the hearing, that error is

harmless.  "No principle of administrative law or common sense requires ... remand [of] a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989); *see Camp v. Massanari*, 22 F. Appx. 311 (4th Cir. 2001) (unpublished) (recognizing and applying harmless error standard and refusing to remand absent a showing of prejudice).

B.      Step Four:  RFC

Mr. Cook next argues that the ALJ failed to comply with SSR 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, when he "summarily concluded that Mr. Cook had the RFC 'to perform the full range of light work.'" (Pl.'s Br. [Doc. #9] at 8 (citing Tr. at 17).)  He asserts that SSR 96-8p required the ALJ to first conduct a "function-by-function assessment" of his "ability to do work-related activities" before expressing Mr. Cook's RFC as an exertional level and that a remand is required.

This argument is unpersuasive, for the reasons stated in *Joyce v. Astrue*, No. 1:06CV27, 2009 WL 313345, at *14 (M.D.N.C. Feb. 5, 2009) (unpublished) (Tilley, J. adopting rec. of Dixon, M.J.)  Numerous other district courts within the Fourth Circuit are to the same effect.  *See, e.g.*, *Brubaker v. Astrue*, No. 3:12-cv-423-REP, 2012 WL 6493606, at *9 (E.D. Va. Nov. 21, 2012) (unpublished) (holding that "a function-by-function analysis is not required" and that "a narrative discussion of the record is sufficient" and collecting cases); *Meadows v. Astrue*, No. 5:11cv00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (unpublished) (same).

Here, the ALJ adequately explained his RFC determination in narrative form in compliance with SSR 96-8p.  He discussed Mr. Cook's functional limitations related to his cardiomyopathy, specifically reviewing the results of a consultative physical examination on

4

March 6, 2007, and findings from later treatments and examinations by Dr. Patel. (Tr. at 17, 18.) The ALJ noted that Mr. Cook's diabetes was "reasonably controlled on insulin," his blood sugar and hemoglobin ("HGB") A1C levels were "only slightly elevated" and that a diabetic foot ulcer had healed by the time of the hearing. (Tr. at 19.) The ALJ further discussed Mr. Cook's "extensive activities of daily living," (Tr. at 17, 19) and noted that both state agency physicians opined that Mr. Cook could perform work at the medium level of exertion. (Tr. at 19.) This discussion of Mr. Cook's treatment history, his response to medication and treatment, his credibility, and the opinion evidence in the record fully satisfied the requirements of SSR 96–8p and the ALJ's conclusion is supported by substantial evidence.

    C.    Consideration of Obesity

Next, Mr. Cook contends that the ALJ erred at step two of the sequential analysis by failing to find his obesity a severe impairment, and further failed to comply with SSR 02-01p, *Titles II and XVI: Evaluation of Obesity*, by not considering the impact of Mr. Cook's obesity on his RFC. The plaintiff bears the burden of showing severity at the second step of the sequential analysis. *See Hunter v. Sullivan*, 993 F.2d, 31, 35 (4th Cir. 1992) ("Through the fourth step, the burden of production and proof is on the claimant."). While the burden is not heavy, it must be with relevant medical evidence. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); 20 C.F.R. § 404.1512(c); 20 C.F.R. § 404.1513(a). An impairment is "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, 1996 WL 374181, at *1.

Mr. Cook fails to meet this burden. The medical evidence in the record shows, at most, a diagnosis of obesity (s*ee, e.g.*, Tr. at 206, 210, 211, 229), which, standing alone, does not support a severity finding. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition"). No medical evidence of record suggests that his obesity had more than a minimal impact on his ability to perform basic work activities. Dr. Adekanmbi, for example, found that Mr. Cook's gait was normal, he exhibited no atrophy, joint swelling or decreased range of motion, and that he was able to sit, stand, move about the examination room, stand on his heels and toes, squat, tandem walk, and climb onto and off of the examination table without much difficulty. (Tr. at 225-26.) Mr. Cook did not include obesity as an impairment on Disability Reports submitted to the Social Security Administration following his applications for benefits (*see* Tr. at 138) or on appeal (*see* Tr. at 163), nor did he mention obesity when the ALJ asked him at the hearing what kinds of medical problems he had and how these problems kept him from working (*see* Tr. at 40-55). Substantial evidence thus supported the ALJ's conclusion that Plaintiff's obesity failed to qualify as a severe impairment.

Further, the ALJ's failure to expressly discuss Mr. Cook's obesity (whether classified as severe or not) in conjunction with his RFC assessment constitutes harmless error. In his arguments to the Court, Mr. Cook does not identify *any* unaddressed limitations that he believes his obesity causes. As such, no basis exists for a remand. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of obesity unnecessary where plaintiff failed to specify how her obesity would impact the ALJ's analysis); *accord, Skarbek v.*

*Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Miller v. Astrue*, No. 2:06-00879, 2008 WL 759083, at *3 (S.D.W. Va. Mar. 19, 2008) (unpublished).

    D.    Treating Provider Opinion

Mr. Cook next asserts that the ALJ erred in failing to discuss the opinion of his treating nurse practitioner, Barbara B. Leitch. Ms. Leitch wrote a letter "To Whom It May Concern" on October 26, 2006, opining that Mr. Cook has several "permanent and irreversible" conditions "that prevent him from working." (Tr. at 211.) She then listed these conditions as "[n]on-insulin dependent diabetes mellitus[;] [s]evere coronary artery disease, cardiomyopathy, injection factor 10-15%[;] [h]istory of congestive heart disease[;] [h]yperlipidemia[;] and [o]besity." *Id.* (internal enumeration omitted).

While it is true that the ALJ failed to discuss this opinion in his decision, his failure to do so was not error. At the outset, as Mr. Cook acknowledges, a nurse practitioner such as Ms. Leitch is not an "acceptable medical source" under the regulations, *see* 20 C.F.R. §§ 404.1513(a), (d)(1); 416.913(a), (d)(1), and therefore, the ALJ's duty to discuss her opinions and the weight he affords such opinions is considerably lighter than the duty to discuss opinions from treatment providers who are "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Moreover, Ms. Leitch's opinions were not particularly helpful. She merely listed Mr. Cook's impairments and stated in conclusory fashion that Mr. Cook's impairments were "permanent and irreversible" and "prevented him from working." She provided neither an assessment of severity nor of impact on functionality, nor did she explain the basis for her opinions. Finally, Ms. Leitch's opinion that Mr. Cook's impairments prevented him from working is not entitled to significant weight; it is the ultimate issue of disability, which is reserved for the Commissioner.

See 20 C.F.R. §§ 404.1527(d); 416.927(d). Under such circumstances, the ALJ's failure to discuss Ms. Leitch's opinions was not error, *see Nolen v. Colvin*, 2014 WL 65355 at *6 (W.D.N.C. January 8, 2014); even if it was, the error was harmless and provides no basis for a remand.

    E.    Reliance on the Grids

Finally, Mr. Cook maintains that the ALJ erred by failing to take administrative notice of Rule 202.06 of the Grids to direct a finding of "disabled" in his case. Mr. Cook asserts that because he was unable to perform his PRW "as actually performed," was 59 years old on his amended alleged onset date of disability (administratively defined as "advanced age," *see* 20 C.F.R. §§ 404.1563(e); 416.963(e)), was limited to light work, and had no "transferable skills," Rule 202.06 directs a finding of "disabled." (Pl.'s Br. [Doc. # 9] at 15-16.) However, the Court's previous holding that substantial evidence supported the ALJ's finding at step four that Mr. Cook could perform his PRW as a technical writer as he actually performed it forecloses this argument. The Grids are relevant only at step five of the sequential analysis. Where substantial evidence supports the ALJ's step four finding regarding PRW, the ALJ was under no obligation to proceed to step five of the sequential analysis. *See, e.g.*, *Springirth v. Astrue*, No. 5:10-00669, 2011 WL 4597366, at *6 (S.D.W. Va. Sept. 30, 2011) (unpublished) (rejecting plaintiff's argument that ALJ should have considered Grids, where ALJ decided case at step four by finding plaintiff capable for performing his PRW).

IT IS THEREFORE **ORDERED** that the Commissioner's decision finding no disability be and is **AFFIRMED**, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing [Doc. #8] is

**DENIED**, that Defendant's Motion for Judgment on the Pleadings [Doc. #17] is **GRANTED**, and that this action is dismissed with prejudice.

This the 29th day of January, 2014.

/s/ 
UNITED STATES DISTRICT JUDGE